UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

AHMET BOURA,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Case No. 1:25-CV-109 JD

**OPINION AND ORDER**

Plaintiff Ahmet Boura applied for disability insurance benefits under Title II and for supplemental security income under Title XVI of the Social Security Act, alleging that he became disabled in January 2021. His claim was rejected, leading to a review by an Administrative Law Judge ("ALJ"), who concluded that Plaintiff was not disabled. The Appeals Council later denied his request for review, and Plaintiff now seeks judicial review in this Court. For the reasons below, the Court will remand the case to the Social Security Administration for further proceedings.

**A. Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The

threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

## B.  Standard for Disability

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine

whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–

(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform past relevant work; and

5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do

basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed

disabled if the ALJ determines that the claimant's impairment or combination of impairments

meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity,

which is defined as the most a person can do despite any physical and mental limitations that

may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses

the residual functional capacity to determine whether the claimant can perform his or her past

work under step four and whether the claimant can perform other work in society at step five. 20

C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform

such work. The claimant has the initial burden of proof at steps one through four, while the

burden shifts to the Commissioner at step five to show that there are a significant number of jobs

in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000

(7th Cir. 2004).

### C.  The ALJ's Decision

In finding that Plaintiff was not disabled, the ALJ employed the customary five-step

analysis. At step two, he found that Plaintiff suffered from the following severe impairments:

"history of seizures within a history of craniotomy secondary to a prior right intracerebral

hemorrhage and [] mild cognitive dysfunction and depression." (ALJ's Decision, R. at 12.) At

step three, the ALJ concluded that Plaintiff "does not have an impairment or impairments or

combination of impairments that meets or medically equals the severity of [a Listing]." (*Id*., R. at

13.)

Plaintiff "has history of brain bleed in 2017" and "right temporoparietal

encephalomalacia with seizure." (*Id.*, R. at 15.) According to Plaintiff, he cannot work because

he suffers from seizures, hypersensitivity to noise and concern that loud machinery could trigger

seizures, short-term memory loss, confusion, problems with understanding, depression, and

stress. The ALJ found that Plaintiff's "medically determinable impairment could reasonably be

expected to cause some of the alleged symptoms to some degree." (*Id.*, R. at 20). Even so, the

ALJ concluded that Plaintiff's statements regarding the severity, persistence, and limiting effects

of those symptoms are not fully consistent with the medical and other evidence in the record.

(*Id*.)

In his decision, the ALJ recounted Plaintiff's testimony at the hearing. Plaintiff is 41

years old. He attends Purdue University Fort Wayne, with some accommodations. Most recently,

he received an A and an F in two summer classes, has health insurance, and has a ten-year work

history as a packer and machine operator. He testified his last seizure was a month before the hearing and described hospital visits and bruising after alleged nocturnal seizures. Plaintiff said he stopped playing soccer three to four months earlier and now mostly walks for exercise. He used to play soccer once a month and sometimes did headers, although his medical care provider told him not to hit the ball with his head. When asked whether he could do simple sit-down work assembling items, Plaintiff first said no because he does not like sit-down jobs, then said he was unsure as he had never tried. He denied any ongoing mental health treatment, and testified that, at the time of the hearing, he was compliant with seizure and blood pressure medications. (ALJ's Decision, R. at 18–19.)

The ALJ emphasized that neurology nurse practitioner Catherine Gillig twice (in June 2022 and August 2023) recommended that Plaintiff undergo a neuropsychological exam but Plaintiff declined each time. (*Id.*, R. at 22, 24.) The ALJ also stressed that although Plaintiff was now taking his antiseizure and blood pressure medications, he has had poor compliance in the past.

As relevant here, the ALJ considered the medical opinion of consultative psychological examiner Leslie Predina, Ph.D., who saw Plaintiff in November 2022. Following Plaintiff's mental status exam, Dr. Predina opined that he had certain impairments, including limitations in his ability to concentrate, persist, and remember:

> Mr. Boura's performance on the Mental Status Exam indicates some issues with his level of cognitive functioning. His judgment and common sense appeared to be slightly impaired. Mr. Boura's orientation appeared to be slightly impaired. His ability to sustain his concentration and persistence appeared to be impaired. He would likely have some problems being able to concentrate and persist on his job responsibilities. He appears to be experiencing some problems with his memory, which is likely secondary to his history of a head injury, and his seizures. Mr. Boura would likely benefit from having a memory evaluation completed with him to formally assess his memory functioning. He would likely have some problems recalling tasks on a job. Mr. Boura's cognitive ability appeared to be in the Low

Average to Average range. His physical adaptive skills (i.e., completing health and hygiene tasks, and household chores) were reported to be unimpaired. Mr. Boura's cognitive adaptive skills (i.e., completing social tasks, driving skills, reading comprehension, written expression, and money management tasks), as reported, appeared to be consistent with his estimated cognitive ability, He appears to have the cognitive ability to perform comparable jobs to that which he has performed in the past. His understanding of arithmetic appeared to be limited. He would likely be capable of managing his own finances with the use of a calculator, and a planner.

Mr. Boura did not report experiencing any unusual emotional or behavioral symptoms. He will likely get along with his supervisors and coworkers. Mr. Boura may derive some benefit from counseling if he chose to pursue it.

(R. at 453–54.)

The ALJ found Dr. Predina's opinion "of limited persuasiveness." (ALJ's Decision, R. at 25.) According to the ALJ, the opinion is inconsistent with treatment records which generally include unremarkable mental status exams, lack of Plaintiff's complaints about the alleged symptoms (*id*. R. 24–25), noncompliance with being referred for a neuropsychological evaluation (*id.*, R. at 22, 24), and lack of Dr. Predina's diagnosis while issuing the opinion (*id.*, R. at 25.) The ALJ also found that Dr. Predina's opinion was inconsistent with Plaintiff's ability to drive, shop, cook complete meals, attend college, play soccer, and read newspapers. (*Id*., R. at 20.)

In considering Plaintiff's capacity for mental functioning, the ALJ found that Plaintiff had mild to moderate limitation in his ability to concentrate, persist, and maintain pace; and moderate limitation in his ability to understand, remember, or apply information. (*Id*., R. at 26.) As for the other "paragraph B" criteria, the ALJ found that in interacting with others, and adapting or managing himself, Plaintiff has moderate limitations. (*Id*.)

6

The ALJ concluded that Plaintiff has the residual functional capacity ("RFC")[1] to

perform light work[2] with various exertional and nonexertional limitations, as well as with the

following mental limitations:

> . . . the work should be simple and routine in nature, and he can learn such tasks and adequately cope with the stress and the work related changes inherent in simple routine tasks, and he can also make decisions commensurate with such work. The work should not involve significant reading and/or report writing, and required writing should not [be] beyond short simple instructions, addresses, short lists and consistent with such limitations.

(*Id*., R. at 18.)

The ALJ posed a hypothetical question to the vocational expert ("VE") based on his RFC

findings. The VE testified that there are jobs in the national economy in significant numbers that

a hypothetical person with Plaintiff's RFC could perform: small parts assembler (16,000 jobs),

collator operator (33,000 jobs), and bench assembly (22,000 jobs). (*Id*., R. at 28.) The VE

testified that employers expect employees to stay on task 90% of the workday and do not allow

more than twelve unexcused absences a year. (R. at 68–69.) Relying on the VE's testimony, the

ALJ concluded "that, considering [Plaintiff's] age, education, work experience, and residual

functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that

exists in significant numbers in the national economy." (ALJ's Decision, R. at 29.) As a result,

the ALJ found Plaintiff to be not disabled.

---

[1] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567.

### D. Discussion

In his appeal, Plaintiff argues that the ALJ (1) failed to develop the record by not ordering that Plaintiff undergo a neuropsychological exam; (2) failed to account in the RFC for Dr. Predina's finding that Plaintiff suffered from impaired concentration, persistence, and memory; (3) failed to consider the reasons behind Plaintiff's poor compliance with treatment and medication regimen; and (4) failed to account in the RFC for Plaintiff's sensitivity to machine-related noise.

The Court will address Plaintiff's second argument only as it merits remand. Like Dr. Predina, the ALJ found that Plaintiff was limited in his ability to concentrate and persist, yet he did not accommodate these limitations in the RFC or the hypothetical, making his RFC assessment incomplete.

### (1) *Plaintiff's Mental Functioning*

"The RFC finding is central to the outcome of a Social Security case." *Holiday v. O'Malley*, No. 2:23-CV-302, 2024 WL 2860088, at *3 (N.D. Ind. June 5, 2024). "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity."). "This includes any deficiencies the claimant may have in concentration, persistence, or pace." *Id.*

Although the ALJ need not use special terminology, the Court cannot "assume that the VE is apprised of such limitations unless she has independently reviewed the medical record." *Id*.

> Before formulating the RFC, at step two, the ALJ utilizes a special technique called the psychiatric review technique ("PRT") to determine the severity of any mental limitations. 20 C.F.R. § 404.1520a. Using the PRT, the ALJ assesses the claimant's function in four categories: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id*. Although the ALJ's step two analysis is not an RFC finding, SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, at *4, if an ALJ finds mental impairments at step two, these should then be "reflected as limitations in the RFC finding." *Alesia v. Astrue*, 789 F. Supp. 2d 921, 933 (N.D. Ill. 2011); *see also Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) ("As a general rule, . . . the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record."); *Paar v. Astrue*, No. 09 C 5169, 2012 U.S. Dist. LEXIS 4948, 2012 WL 123596, at *13 (N.D. Ill. Jan. 17, 2012) (finding ALJ erred in not including mild mental limitations he found at step two in his RFC analysis).

*Judy M. v. Kijakazi*, 658 F. Supp. 3d 596, 602 (N.D. Ill. 2023). After all, adequate functional mental capacity is required for competitive employment:

> To do a work-related task, you must be able to understand and remember and apply information required by the task. Similarly, you must be able to concentrate and persist and maintain pace in order to complete the task, and adapt and manage yourself in the workplace. Limitation in any one of these parts (understand or remember or apply; concentrate or persist or maintain pace; adapt or manage oneself) may prevent you from completing a work-related task.

*See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(F)(3)(f)(i).

In addition, "an ALJ 'must provide a logical bridge between the evidence and [her] conclusions.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)). That's a shorthand term for the requirement "that ALJs provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). "In other words, as with

any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). "That logical bridge can assure a reviewing court that the ALJ considered the important evidence and applied sound reasoning to it." *Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025). "We review the ALJ's decision holistically to determine whether the ALJ grappled with evidence favorable to the claimant, but we will not reconsider facts, reweigh evidence, or resolve conflicts." *Chrisman on behalf of N.R.C. v. Bisignano*, 137 F.4th 618, 624 (7th Cir. 2025) (citations omitted).

As relevant to Plaintiff's appeal, Dr. Predina opined that Plaintiff's "ability to sustain his concentration and persistence appeared to be impaired" and that he "appears to be experiencing some problems with his memory, which is likely secondary to his history of a head Injury." (R. at 453.) In turn, the ALJ found that Plaintiff has mild to moderate limitations in his ability to concentrate, persist, and maintain pace[3] as well as moderate limitations in his ability to understand, remember, and apply information.[4] (ALJ's Decision, R. at 26.) In assessing the RFC and, relatedly, in his hypothetical to the VE, the ALJ did not provide any limitations for

---

[3] Concentration, persistence, and pace refer "to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that [the claimant] understand[s] and know[s] how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(3).

[4] "This area of mental functioning refers to the abilities to learn, recall, and use information to perform work activities. Examples include: Understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(1).

10

Plaintiff's difficulties with concentration, persistence, and pace. [5] Rather, the ALJ limited

Plaintiff to simple and routine work:

> In additional accommodation of cognitive mental health issues, work should be simple and routine in nature and the claimant can learn such tasks and adequately cope with the stress and the work related changes inherent in simple routine tasks, and he can also make decisions commensurate with such work. The work should also not involve significant reading and/or report writing, and required writing should not [be] beyond short simple instructions, addresses, short lists and consistent with such limitations.

(*Id.*) Yet by itself, a limitation to simple and routine work, or simple routine tasks, or whatever

else the variation may be does not account for claimant's difficulties with concentration,

persistence, and pace. "The ability to stick with a given task over a sustained period is not the

same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner v. Astrue*,

627 F.3d 614, 620 (7th Cir. 2010). That is, while the tasks may be simple and routine and thus

can be learned quickly, the Court needs assurance that the RFC accounts for Plaintiff's actual

ability to concentrate, persist, and maintain pace while doing such tasks full time. Furthermore,

it's not enough for the ALJ to say that the evidence does not support greater than moderate

limitations for mental functioning (*see* ALJ's Decision, R. at 25); the ALJ must explain how

those moderate limitations are accommodated in the RFC, or explain why no accommodation is

needed. Saying that Plaintiff can perform, simple, routine work does neither. There's no

indication that the VE independently reviewed the medical record so as to be clearly aware of

Plaintiff's limitations. Consequently, her opinion about the jobs that the hypothetical person can

---

[5] Although in his argument Plaintiff focuses on his ability to concentrate and persist and leaves out the ability to maintain pace, the three functions go hand-in-hand, so the Court will refer to them as a unit for the purpose of this discussion. As made clear in the Federal Register in response to the commenters' questions, "the greatest degree of limitation of any single part of the area of mental functioning will direct the rating of limitation for that whole area of functioning." Revised Medical Criteria for Evaluating Mental Disorders, 81 FR 66138-01, 2016 WL 5341732 (Sept. 26, 2016); *see also Lockett v. Saul*, 834 F. App'x 236, 239 (7th Cir. 2020) ("A moderate rating in maintaining concentration, persistence, and pace means the claimant is so limited in at least one of those areas, not necessarily all three." (citing 20 C.F.R., Part 404, Subpart P, App. 1, § 12.00(F)(3)(f)).

perform may be flawed. On remand, the ALJ must incorporate Plaintiff's limitations in concentration, persistence, and pace into the RFC. On the other hand, if the ALJ believes that those limitations would not interfere with Plaintiff's ability to perform full time work, the ALJ should explain this.

In countering Plaintiff's contention that the RFC fails to account for his limitations in concentration and persistence, the Commissioner points out that the ALJ considered Dr. Predina's findings of impaired concentration, persistence, pace, and memory and "accounted for these [limitations] in the RFC restrictions to simple, routine work with no significant reading or writing." (Def.'s Br., DE 23 at 4.) (citing R. at 18).) But the Commissioner does not explain how the restrictions to simple routine work with no significant reading or writing account for the limitations in concentration, persistence and pace. The Commissioner asks the Court to accept his conclusion without analysis, but the answer he proposes is not so obvious that the Court can dispense with both further explanation and supporting evidence. *See, e.g.*, *Bruno v. Saul*, 817 F. App'x 238, 242 (7th Cir. 2020) (noting the concern that the restriction for "simple, repetitive tasks" is a one-size-fits-all solution without delving into an individualized assessment of the claimant's specific symptoms.)

Again, the Seventh Circuit has reiterated that "observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). The court also explained that "[w]hen the ALJ supplies a deficient basis for the VE to evaluate the claimant's impairments, this error necessarily calls into doubt the VE's ensuing assessment of available jobs." *Id*. Again, although the ALJ seemed

to recognize Plaintiff's concentration, persistence, and pace challenges, he did not adequately address them in the RFC.

What is more, the ALJ has supplied no reason to believe that other restrictions adequately address the limitations in concentration, persistence, and pace. For example, learning simple routine tasks or dealing with the stress resulting from changes that may come, or making decisions commensurate with such work, or requiring an insignificant amount of reading or writing, whether in short, simple instructions or not, do not account for Plaintiff's ability to "focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(3). Missing from the ALJ's decision are citations to evidence that such restrictions do in fact account for the CPP limitations.

For example, in *Bruno v. Saul*, 817 F. App'x 238, 242 (7th Cir. 2020), the ALJ accommodated the plaintiff's moderate CPP limitations by limiting "him to 'simple routine tasks,' using 'judgment limited to simple work related decisions,' and having 'brief and superficial interaction' with coworkers." The court found no error because "[t]he ALJ explained that she limited [the plaintiff] to simple tasks specifically because of '*evidence of decreased concentration, when handling more complex tasks*, as evidenced by past poor performance on long tests and testimony that he was unable to keep a job due to being unable to pass an entrance test." *Id*. 242 (emphasis added). Here, however, the ALJ has identified no evidence (nor has the Commissioner) that modifying other areas of mental functioning, or limiting Plaintiff to simple and routine work would lead to improved concentration, persistence, and pace. *See Hoeppner v. Berryhill*, 399 F. Supp. 3d 771, 775 (E.D. Wis. 2019) ("The ALJ may have thought that limiting a claimant to 'simple, routine, and repetitive tasks, with no fast-paced work, only simple work-related decisions, occasional workplace changes, and only occasional interaction with the public

and supervisors' was sufficient to account for the moderate difficulties in CPP the ALJ found, but the Seventh Circuit has made clear that it is not."); *see also Randi R. W. v. Comm'r of Soc. Sec.*, 421 F. Supp. 3d 616, 628 (N.D. Ind. 2019) ("[T]he ALJ's failure in the RFC analysis to connect evidence of [the plaintiff's] limitations in CPP that allegedly account for the full range of her limitations is problematic given authority that 'simple tasks' restrictions do not, on their own and without further explanation, account for moderate limitations in CPP.") (citing cases).

The ALJ's failure to include in the RFC Plaintiff's mild to moderate limitation in concentration, persistence, and pace is significant. The VE testified that being off task more than 10% of a workday or missing work more than twelve times a year would be job-prohibitive. As a result, it's important to understand to what extent, if at all, the ALJ believed Plaintiff's limitations in concentration, persistence, and pace would interfere with his ability to perform work. The VE should have been told about Plaintiff's limitations that the ALJ himself endorsed, or the ALJ should have explained why the limitations are inconsequential, so as to ensure that the jobs the VE proposed are ones that Plaintiff can actually do. *See Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021) ("The ALJ's findings about the jobs [the plaintiff] could perform needed to account in a meaningful way for the earlier findings that recognized her difficulties with concentration, completing tasks, and managing stress."); *Crump*, 932 F.3d at 570 ("[T]he ALJ must ensure that the VE is 'apprised fully of the claimant's limitations' so that the VE can exclude those jobs that the claimant would be unable to perform." (quoting *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)). In other words, the VE's testimony regarding available jobs cannot be relied on as substantial evidence.

The Seventh Circuit makes few exceptions to the requirement that all the claimant's limitations be included in the RFC so that the VE can consider the available jobs on the basis of

14

what the claimant can and can't do. Such cases do exist but their reach is very narrow. For example, the Seventh Circuit has allowed the RFC to stand "when a claimant's limitations were stress- or panic-related and the hypothetical restricted the claimant to low-stress work." *O'Connor-Spinner*, 627 F.3d at 619 (citing *Johansen v. Barnhart*, 314 F.3d 283 (7th Cir. 2002); *Arnold v. Barnhart*, 473 F.3d 816, 820, 823 (7th Cir. 2007); and *Sims v. Barnhart*, 309 F.3d 424, 427, 431–32 (7th Cir. 2002)). Similarly, the court of appeals allowed an RFC where, "although the limitations on concentration, persistence and pace were not mentioned in the hypothetical, the underlying conditions were." *Id*. at 620 (citing *Simila v. Astrue*, 573 F.3d 503, 522 (7th Cir. 2009)). Finally, in *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021), the court upheld an ALJ's decision where the ALJ "justified the conclusion that the claimant could work at a consistent pace by expressly incorporating the doctor's recommendation that the claimant engage in only simple, repetitive tasks (which, according to the doctor, accounted for the claimant's pace-related limitations)." *Moy*, 142 F.4th at 555. But none of these scenarios apply here, given that nothing in the RFC can be read as a substitute for mild to moderate limitations in concentration and persistence and pace. Accordingly, a remand is required.

### E.  Conclusion

For these reasons, the Court REVERSES the Agency's decision and REMANDS this matter to the Agency for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: March 31, 2026

/s/ JON E. DEGUILIO

Judge
United States District Court
